## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL M. CICCARONE,** | : | |
| **RHONDA MEKOSH** | : | |
| **and MICHAEL MEKOSH** | : | |
| **Plaintiffs** | : | **C.A. No.  03-1660** |
| **v.** | : | |
| | : | |
| **B.J. MARCHESE, INC.** | : | |
| **BENJAMIN MARCHESE, JR.,** | : | |
| **BENJAMIN MARCHESE, III** | : | |
| **Defendants** | : | |

### ORDER PRELIMINARILY APPROVING SETTLEMENT,
### SCHEDULING DEADLINES FOR NOTICE AND OBJECTIONS,
### AND SCHEDULING HEARING TO CONSIDER FINAL APPROVAL OF
### SETTLEMENT AND AWARD OF ATTORNEYS FEES AND COSTS

AND NOW, this ____ day of July, 2004, upon consideration of the June 14, 2004 and July 8, 2004 Joint Motions of Plaintiffs and Defendants for Preliminary Approval of Settlement, Establishing Deadlines For Opt-Outs and Claim Forms, and Notice of Hearing on Final Certification of Class, Final Approval of the Settlement and on Award of Attorneys Fees and Costs, and the Memoranda in support thereof, and after conference with counsel for the parties and counsel for Erie Insurance Exchange, IT IS HEREBY ORDERED AND DECREED as follows:

1.      The Class Action Settlement Agreement proposed by the parties, and all of its terms and conditions, including the release provisions, is hereby preliminarily approved.

2.      A hearing on final approval of the proposed settlement and its terms, the award of attorneys' fees and expenses, and any objections, shall be held at 10:00 a.m. on October 4, 2004 in Courtroom 10A, United States Courthouse, 601 Market Street, Philadelphia, PA 19106 (the "Settlement Hearing").

3.      Approval is hereby given to the form of notice proposed by the parties and attached hereto.

4.      Class Counsel are directed to send the Notice to Class Members within ten (10) days of the date hereof by first class mail and to promptly file an Affidavit of Service of the Class Notice.

5.      Any objections to requests to be excluded from the Class must be in writing and filed with the Court within forty (40) days of the date that notice is sent.

6.      Any award of attorneys fees to Class Counsel and the reimbursement of costs must be approved by the Court.   Application for attorneys' fees and reimbursement of expenses of Plaintiffs and Class Counsel shall be filed with the Clerk of the Court on or before August 16, 2004.

7.      Any objections to the proposed settlement and approval of the Class Action Settlement Agreement by members of the Class must be in writing and filed with the Court on or before September 16, 2004.

8.      Any Class Member may appear at the October 4, 2004 Settlement Hearing in person or by counsel and be heard in support of, or in opposition to, the fairness, reasonableness and adequacy of the Settlement, and/or the request for an award of attorneys' fees and reimbursement of expenses of Plaintiffs and Class Counsel, provided, however, that no person shall be heard in objection unless such person has filed with the Clerk of the Court a notice of such person's intention to appear together with a statement that indicates the basis for such objection along with any supporting documentation on or before September 16, 2004.

9.      If the Settlement is not approved or consummated for any reason, the Settlement and all proceedings in connection therewith shall be without prejudice to the *status quo ante* of this Action.

                                                                BY THE COURT:


                                                    _____
                                                                Shapiro, S. J.

2

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL M. CICCARONE, | : | |
| RHONDA MEKOSH | : | |
| and MICHAEL MEKOSH | : | |
|              **Plaintiffs** | : | C.A. No.  03-1660 |
|     **v.** | : | |
| | : | |
| B.J. MARCHESE, INC. | : | |
| BENJAMIN MARCHESE, JR., | : | |
| BENJAMIN MARCHESE, III | : | |
|              **Defendants** | : | |

**PLAINTIFFS' AND DEFENDANTS' JULY 8, 2004 JOINT MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AND
NOTICE OF HEARING ON FINAL APPROVAL OF
SETTLEMENT AND AWARD OF ATTORNEYS FEES AND COSTS**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Michael M. Ciccarone, Rhonda Mekosh, Michael Mekosh (collectively, "Plaintiffs") and Defendants Benjamin J. Marchese, Inc., Benjamin J. Marchese, Jr. and Benjamin J. Marchese, III (collectively, "Defendants"), jointly move for the entry of an order preliminarily approving settlement and scheduling a hearing to consider final approval of the settlement.

1.      The parties have reached a class-wide settlement of equitable relief and monetary relief in the amount of Two Million and Four Hundred and Fifty Thousand Dollars ($2,450,000.00) to be paid into an interest bearing escrow account ("settlement amount") within a reasonable time after the entry of the Order preliminarily approving the Settlement.  All costs of providing class certification and settlement notice and of administering the settlement shall be paid out of the settlement amount.  A copy of the Class Action Settlement Agreement is attached hereto as Exhibit "1."  A copy of the proposed form of Notice is attached hereto as Exhibit "2."  The form of Notice will substitute a date certain for the 40 day opt-out period, after the Court issues an Order preliminarily approving the settlement, by calculating the 40 days from the date of any such Order.

2.      The settlement was achieved following extensive arms-length negotiations between Plaintiffs, Defendants, Erie Insurance Exchange, and their respective counsel, extensive independent investigation, discovery, rulings on class certification and summary judgment, and the supervision of two (2) judicial officers.

3.      The settlement provides substantial equitable relief to the Class.

4.      All Class Members receive equitable relief, which they would not receive but for this Class Action.

5.      Equitable relief is provided to Group A Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form to Credit Reporting Agencies representing that (1) the credit report and/or inquiry was obtained without a permissible purpose; and (2) directing each Credit Reporting Agency to immediately correct its records and permanently delete the identified inquiry promptly.  This equitable relief is presently ongoing.

6.      Equitable relief is provided to Group B Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form to Credit Reporting Agencies representing that (1) the loan or credit obligation referenced in that letter is not a loan obligation incurred by the identified Class Member; and, (2) directing both the lender(s) and the Credit Reporting Agency to immediately correct their records and permanently delete such an entry immediately.  Additionally, Class Counsel will submit to the Credit Reporting Agencies available information regarding the consumer, the identity of the fraudulent or unauthorized loan and the date thereof as a Request for Reinvestigation of disputed information pursuant to FCRA §1681i(a).  The Credit Reporting Agencies will investigate those

disputes and notify Class Counsel and defense counsel of the results of the reinvestigation.  This equitable relief is presently being implemented.

7.     Equitable relief is provided to Group C Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form to Credit Reporting Agencies representing that (1) the loan and credit obligation referenced in the letter relating to the identified Class Member is, after the date of the trade-in, no longer a loan obligation incurred by the identified Class Member; (2) directing both the lender and the credit reporting agency to immediately correct their records and delete reporting any such entry as "delinquent" immediately; and, (3) representing that no delinquency on the identified loan obligation after the trade-in date should ever be referenced or re-inserted again in the identified Class Member's consumer report.   Additionally, Class Counsel will submit to the Credit Reporting Agencies available information regarding the consumer, the identity of the fraudulent or unauthorized loan and the date thereof as a Request for Reinvestigation of disputed information pursuant to FCRA §1681i(a).  The Credit Reporting Agencies will investigate those disputes and notify Class Counsel and defense counsel of the results of the reinvestigation.  This equitable relief is presently being implemented.   Additionally, Defendants have executed and delivered to Plaintiffs' counsel written consents to any petitions to be filed in state court by the Class Members necessary to evidence Defendants' consent to a transfer of the title of the identified trade-in vehicle(s) to the senior lien holder, or if no secured party, to the bona fide purchaser of the identified vehicle.  These petitions need to be filed.  There are approximately thirty-three (33) separate lawsuits that are either pending or planned in state court to clarify and transfer title affecting Group C of the Class.

8.      In addition, several Group C Members are Defendants in ongoing state court matters in which lenders are seeking interest, penalties and fees arising from the Defendants' failure to satisfy pre-existing liens.  These suits need to be resolved.

9.      The settlement also provides monetary relief of $2,450,000 to fund the prosecution and defense of litigation to transfer and clear title for Group C Class Members; to address alleged existing lien obligations for Group C Class Members who traded-in vehicles and for whom the lien was not paid by Defendants; to be distributed to Group B and Group C Class Members on a *pro rata* basis as compensation for credit damage in proportion to the number of unauthorized loans and/or unpaid lien obligation transactions; and for reimbursement of all attorneys fees and litigation costs, which are approximately $1,090,567.25 in fees and $106,555.57 in costs incurred as of June 30, 2004.  Class Counsel will submit a separate Fee Petition setting forth their lodestar, the evaluation of the equitable relief obtained for the entire Class, and the proportion of their fee request to the value of the monetary relief and the class-wide equitable relief.

10.     The Settlement meets all the requirements of Federal Rule of Civil Procedure 23, as more fully set forth in the accompanying Memorandum of Law, which is incorporated herein.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court:

1.      Grant their Joint Motion for Preliminary Approval of the Class Action Settlement Agreement attached hereto as Exhibit "1";

2.      Schedule a hearing on October 4, 2004 to consider final approval of the settlement and its terms, and on awarding attorneys' fees, costs and expenses;

3.      Approve the form of notice attached hereto as Exhibit "2";

4.      Direct that the notice be mailed by first class mail to Class Members within ten (10) days after the preliminary approval of this Settlement, and that Class Counsel file an Affidavit of Service;

5.      Require written notice of any opt-outs from the Class to be filed and served upon counsel for the settling parties within forty (40) days of the date that notice is sent;

4

6.      Require that Class Counsel submit their fee petition and request for reimbursement of costs on or before August 16, 2004;

7.      Require written notice of any objections to the settlement and request for reimbursement of attorneys fees and litigation costs to be filed and served upon counsel for the settling parties on or before September 16, 2004;

8.      Enter a final order, the proposed form of which will be submitted to the Court by Plaintiffs and Defendants at or before the Settlement Hearing:

(i)      Approving the terms and conditions of the Class Action Settlement Agreement, including the release provisions signed by the named class plaintiffs and ruling that they are binding upon all Class Members;

(ii)      Dismissing with prejudice, without costs, the Complaint in this action and in any other actions, now existing or hereafter brought against the Defendants or any of the Released Parties (as defined in the attached Class Action Settlement Agreement) by any Class Member in any court, administrative agency or other tribunal, upon any of the claims, rights of recovery or causes of action settled or released by the attached Class Action Settlement Agreement.

(iii)      Barring and enjoining all Class Members from asserting commencing and/or prosecuting any action or proceeding against the Defendants or any of the Released Parties for any and all claims, rights of recovery or causes of action settled or released by the attached Class Action Settlement Agreement;

(iv)      Providing that the attached Class Action Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and is in the best interests of the Class;

(v)      Reserving the Court's continuing and exclusive jurisdiction over the Complaint and the Class Action Settlement Agreement, including to administer, supervise, construe and enforce the Class Action Settlement Agreement in accordance with its terms for the mutual benefit of the parties.

Respectfully Submitted,

/s Timothy T. Myers     /s Joseph F. Van Horn, Jr.

Timothy T. Myers, Esquire    Joseph F. Van Horn, Jr., Esquire
Mark A. Kearney, Esquire     Bodell, Bove, Grace & Van Horn, P.C.
Elliott Greenleaf & Siedzikowski, P.C.  30 S. 15th Street, Suite 600
Union Meeting Corporate Center V  Philadelphia, PA  19102
925 Harvest Drive, P.O. Box 3010   Attorneys for B. J. Marchese, Inc. and
Blue Bell, PA   19422      Benjamin J. Marchese
Attorneys for Plaintiffs

/s Cary L. Flitter       /s John W. Ashley

Cary L. Flitter, Esquire     John W. Ashley, Esquire

Lundy, Flitter, Beldecos & Berger, P.C.    Fonzone & Ashley
450 North Narberth Avenue    P.O. Box 4180, 33 S. 7th Street
Narberth, PA  19072-1898    Allentown, PA  18101
Attorneys for Plaintiffs    Attorneys for Benjamin J. Marchese, III

Dated:  July 9, 2004

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL M. CICCARONE,** | : | |
| **RHONDA MEKOSH** | : | |
| **and MICHAEL MEKOSH** | : | |
| **Plaintiffs** | : | **C.A. No.  03-1660** |
| **v.** | : | |
| | : | |
| **B.J. MARCHESE, INC.** | : | |
| **BENJAMIN MARCHESE, JR.,** | : | |
| **BENJAMIN MARCHESE, III** | : | |
| **Defendants** | : | |

### MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JULY 8, 2004 JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE OF HEARING ON FINAL APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS FEES AND COSTS

Plaintiffs and Defendants hereby submit this Memorandum of Law in support of their July 8, 2004 Joint Motion to Preliminarily Approve a Class Action Settlement.

## I.     INTRODUCTION

On March 26, 2004 the Court granted the Parties' Joint Motion and entered an Order that provided equitable relief to the Class.  On April 30, 2004 the Court issued a Supplemental Order for Equitable Relief.  In addition to the equitable relief, Plaintiffs and Defendants have reached a class-wide settlement for monetary damages in the amount of two million four hundred and fifty million dollars ($2,450,000.00) to be placed in escrow by Defendants and Erie Insurance Exchange within a reasonable time after the preliminary approval of the settlement.  A true and correct copy of the Class Action Settlement Agreement is attached hereto as Exhibit "1."

The Class received notice of the original class certification order in October, 2003, but has not received notice of the settlement of equitable or monetary relief.  Plaintiffs and Defendants jointly request that the Court issue an Order preliminarily approving the settlement; providing the procedures for notice and objections; and scheduling a hearing for final approval of the proposed

settlement.  A copy of the proposed form of Notice is attached hereto as Exhibit "2."[1]

## II.     <u>SUMMARY OF THE LITIGATION AND THE PROPOSED SETTLEMENT</u>

On March 19, 2003, Plaintiffs filed a Complaint in the United States District Court for the Eastern District of Pennsylvania seeking, *inter alia*, class certification, damages and equitable relief.  Plaintiffs alleged that Defendants:  used consumer credit reports for impermissible and unauthorized purposes, including to obtain unauthorized loans in consumers' names in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 <u>et</u> <u>seq.</u> ("FCRA"); failed to satisfy pre-existing liens on certain vehicles traded-in by consumers, and certain vehicles sold to consumers; and caused credit obligations on consumers' credit reports without their knowledge, resulting in further damage for invasion of credit privacy and past and future damages for harm to credit reputation.

Defendants filed an Answer to the Complaint, asserted numerous Affirmative Defenses, and denied and continue to deny they have any liability to Plaintiffs and the Class Members.

On October 8, 2003, the Court appointed Class Counsel, appointed Plaintiffs Michael M. Ciccarone, Rhonda Mekosh and Michael Mekosh as class representatives, and certified the Class as consisting of:

> All persons injured during the period of time from March 19, 2001 through the present ("Class Period") as members of one or all of the following groups:
>
> (a)    Plaintiffs and persons who had their consumer report(s) obtained by any defendant for whom the defendants cannot produce authorization of permissible purpose (Group A);
>
> (b)    Plaintiffs and persons with loan obligations for vehicles allegedly sold or leased by a defendant that they did not buy or

---

[1] The form of Notice will substitute a date certain for the 40 day opt-out period, after the Court issues an Order preliminarily approving the settlement, by calculating the 40 days from the date of any such Order.

lease from a defendant (Group B); and/or

(c)   Plaintiffs and persons with unpaid loan obligation(s) for vehicles after title was given to a defendant under an agreement that the loan obligation(s) would be paid by a defendant (Group C).

On March 18, 2004, Plaintiffs and Defendants filed The Parties' Joint Motion For Equitable Relief.  On March 26, 2004 the Court granted the Parties' Joint Motion and entered an Order, and on April 30, 2004 the Court issued a Supplemental Order for Equitable Relief, which collectively provided the equitable relief described below.

On March 31, 2004, the Court ruled on Plaintiffs' and Defendants' Motions for Summary Judgment.  The Court denied Plaintiffs' Motion for Partial Summary Judgment on Counts I, II, III, IV, VI and VII.  The Court held that trial would proceed on Counts I, II, VI and VII before a jury, and severed and stayed Counts III and IV.  The Court denied Defendants' Motion for Partial Summary Judgment.  The Court conducted the May 3, 2004 *Daubert* hearing, and adjourned it for the presentation of additional expert testimony and argument.  Additionally, Defendants filed a Motion to Trifurcate the proceedings.  Although the Court had not ruled on Defendants' Motion, the Court indicated that it might bifurcate the trial on liability and convene hearings on individual damages.  Approval of this Settlement obviates the evidentiary issues.

Throughout the litigation, Plaintiffs and Defendants conducted settlement negotiations.  These settlement negotiations resulted in the Parties' March 18, 2004 Joint Motion For Equitable Relief, and the Court's March 26, 2004 and April 30, 2004 Orders approving the proposed stipulated equitable relief.  Additionally, Plaintiffs, Defendants, Erie Insurance Exchange, and their respective counsel, conducted discussions and arms-length negotiations, which ultimately resulted in this Class Action Settlement Agreement and its additional monetary relief.  The Court presided over these settlement negotiations, with the assistance of the Honorable Magistrate

Judge M. Faith Angell.  On May 13, 2004, Plaintiffs, Defendants and Erie Insurance Exchange

advised the Court that they had reached a settlement for monetary relief of $2,450,000.

The settlement, in summary, provides substantial equitable relief to the class.  All Class

Members receive equitable relief, which they would not receive but for this Class Action:

> Equitable relief to Group A Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form to Credit Reporting Agencies representing that (1) the credit report and/or inquiry was obtained without a permissible purpose; and (2) directing each Credit Reporting Agency to immediately correct its records and permanently delete the identified inquiry promptly.  This equitable relief is presently ongoing.

> Equitable relief to Group B Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form Credit Reporting Agencies representing that (1) the loan or credit obligation referenced in that letter is not a loan obligation incurred by the identified Class Member; and, (2) directing both the lender(s) and the Credit Reporting Agency to immediately correct their records and permanently delete such an entry immediately.  Additionally, Class Counsel will submit to the Credit Reporting Agencies available information regarding the consumer, the identity of the fraudulent or unauthorized loan and the date thereof as a Request for Reinvestigation of disputed information pursuant to FCRA §1681i(a).  The Credit Reporting Agencies will investigate those disputes and notify Class Counsel and defense counsel of the results of the reinvestigation.  This equitable relief is presently being implemented.

> Equitable relief to Group C Class Members in the form of, *inter alia,* Defendants jointly sending notification with a consumer dispute verification form to Credit Reporting Agencies representing that (1) the loan and credit obligation referenced in the letter relating to the identified Class Member is, after the date of the trade-in, no longer a loan obligation incurred by the identified Class Member; (2) directing both the lender and the credit reporting agency to immediately correct their records and delete reporting any such entry as "delinquent" immediately; and, (3) representing that no delinquency on the identified loan obligation after the trade-in date should ever be referenced or re-inserted again in the identified Class Member's consumer report.  Additionally, Class Counsel will submit to the Credit Reporting Agencies available information regarding the consumer, the identity of the fraudulent or unauthorized loan and the date thereof as a Request for Reinvestigation of disputed information pursuant to FCRA §1681i(a).  The Credit Reporting Agencies

will investigate those disputes and notify Class Counsel and defense counsel of the results of the reinvestigation. This equitable relief is presently being implemented. Additionally, Defendants have executed and delivered to Plaintiffs' counsel written consents to any petitions to be filed in state court by the Class Members necessary to evidence Defendants' consent to a transfer of the title of the identified trade-in vehicle(s) to the senior lien holder, or if no secured party, to the bona fide purchaser of the identified vehicle. There are approximately thirty-three (33) separate lawsuits which could potentially be filed in state court to clarify and transfer title.

In addition, several Group C Members are Defendants in ongoing state court matters in which lenders are seeking interest, penalties and fees arising from the Defendants' failure to satisfy pre-existing liens. These suits need to be resolved.

The settlement also provides monetary relief of $2,450,000 to fund the prosecution and defense of litigation to transfer and clear title for Group C Class Members; to address alleged existing lien obligations for those Group C Class Members who traded-in vehicles and for whom the lien was not paid by Defendants; to be distributed to Group B and Group C Class Members on a *pro rata* basis as compensation for credit damage in proportion to the number of unauthorized loan and/or unpaid lien obligation transactions; and for reimbursement of attorneys fees and litigation costs, which are approximately $1,090,567.25 in fees and $106,555.57 in costs incurred as of June 30, 2004.

Plaintiffs' proposed amended Plan of Allocation for the monetary relief is attached hereto as Exhibit "3." Class Counsel will submit a separate Fee Petition setting forth their lodestar, the evaluation of the equitable relief obtained for the entire Class, and a cross-check of the proportion of their fee request to the value of the monetary relief and the class-wide equitable relief on or before August 16, 2004.

Plaintiffs and Defendants have conducted a thorough investigation and examination relating to the facts, law, defenses, the underlying events, acts and/or omissions relating to the

matters and claims, including having reviewed documents, interviewed and examined witnesses and conducted discovery.  Based upon an analysis of the facts and law applicable to the claims of the Plaintiffs and the Class, and considering the burdens, expenses, risks and inconvenience of continued and lengthy litigation, including the inherent risks, uncertainties and delays associated with protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving claims, Plaintiffs, Defendants, and their respective counsel, have concluded that it is in the best interests of all parties and of the Class to pursue settlement.

## III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The revised Rule 23 (e) of the Federal Rules of Civil Procedure requires court approval of any class action settlements:

(e) Settlement, Voluntary Dismissal, or Compromise.

(1)   (A)   The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B)  The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C)  The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(2)   The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(3)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(3)  In an action previously certified as a class action under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (4)  (A)  Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A).
>
> (B)  An objection made under Rule 23(e)(4)(A) may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23 (e).  *See also Ralston v. Zats*, 2000 WL 1781590 at *6 (E.D. Pa. 2000);

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 293-94 (E.D. Pa. 2003).

*Preliminary* approval of a proposed settlement of a class action is merely the determination of whether the settlement is in the range of possible approval.  The court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute.  *In Re: Automotive Refinishing Paint Antitrust Litigation,* 2004 WL 1068807 at *1 (E.D.Pa. May 11, 2004).  Instead, the court must determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval...." *Id.* 2004 WL 1068807 at *2  (citing *Thomas v. NCO Financial Systems,* No. Civ. A. 00- 5118, 2002 WL 1773035 at *5 (E.D.Pa. July 31, 2002); *In re Prudential Sec. Inc. Limited P'ship Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y.1995); MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (1995)). This analysis often focuses on whether the settlement is the product of "arms-length negotiations." *Id.*

A settlement falls within "the range of possible approval" under Rule 23 when there is a conceivable basis for presuming that the final approval of the settlement will be fair, adequate, and reasonable.  *See e.g., Walsh v. Great Atlantic & Pacific Tea Co. Inc.*, 726 F. 2d 956, 965 (3d Cir. 1983).  The settlement before this Court is well within the range of possible approval.  It provides substantial benefits at no out of pocket cost to the Class Members.  The Class Members

will receive substantial equitable relief, potential future credit damages will be reduced and compensated, and those members of the Class who have suffered economic damages from alleged identity theft, and/or unpaid trade-in liens, will be compensated by monetary damages. Under the proposed settlement, if it is ultimately approved by the Court, the Class Members will receive this money and benefit promptly, and will forego any risk associated with proceeding to a trial and possible appeals thereafter.  They will also eliminate any further delays in receiving the money and benefits.

Significantly, the Defendants do not have the monetary resources to compensate Plaintiffs for credit or other damages.  Their insurance company, Erie Insurance Exchange, has asserted numerous reservations of rights, and stated that it may not pay any potential judgment even if ultimately attained by Plaintiffs.  Even if Plaintiffs obtain a judgment, the nature and extent of insurance coverage available to pay any such judgment is uncertain and could involve additional litigation, attorneys fees and expenses.  Thus, there is an increased risk and cost of litigation for Plaintiffs.  The proposed settlement is, therefore, sufficient to warrant preliminary approval for the purpose of providing notice apprising the Class Members of the settlement, and for establishing procedures to consider a final approval under Rule 23(e).

This is a case involving vigorously contested issues, including whether any insurance proceeds would be available to satisfy any potential judgment.  The proposed settlement was reached after a thorough and independent investigation and extensive litigation, including summary judgment proceedings.  Settlement discussions took place over the course of several months.  Many hours of negotiations were conducted at arms-length, with the attorneys on both sides compromising when appropriate and necessary to reach a fair and adequate agreement.

At this point of preliminary approval, it is enough that the settlement be a compromise

and disposition of contested issues, negotiated at arms-length by experienced counsel, to be entitled to an initial presumption of fairness and adequacy. *In Re: Automotive Refinishing Paint Antitrust Litigation,* 2004 WL 1068807 at *2. Here, this Court and the Magistrate Judge closely supervised and presided over these arms-length settlement negotiations.

Class Counsel respectfully submits that a negotiated settlement that enables the Class Members to receive, at the present time, substantial equitable relief and a settlement fund of $2,450,000 is fair and reasonable under circumstances in which there is the inherent risk and delays of a trial, possible appeals thereafter, and the possibility that any judgment might not be satisfied. This equitable recovery is a substantial benefit to the Class Members at no cost to them, particularly in view of the fact that no attorneys fees will be paid out of pocket by any Class Members. In sum, the proposed settlement is clearly within the "range of possible approval" and thus the preliminary appeal procedure is proper.[2]

## IV.   THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES IS NOTICE BY MAIL.

As quoted above, Rule 23(e)(1)(B) now requires notice of a class-wide settlement to be provided in a "reasonable manner" to all Class Members who would be bound by it. The revised Rule 23(c)(2), continues to set forth the standard that it should be the best notice practicable under the circumstances:

> (2)   (A)   For any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class.
>
> (B)   For any class certified under Rule 23(b)(3), the court must

---

[2] On or before August 16, 2004, Class Counsel will submit a separate Fee Petition to be paid from the settlement amount setting forth their lodestar, the evaluation of the equitable relief obtained for the entire Class, and the proportion of their fee request to the value of the monetary relief and the class-wide equitable relief. *See O'Keefe*, 214 F.R.D. at 305-07. Class Counsel reserves the right to submit a supplemental petition for fees and costs for the period thereafter, through final approval and administration, and any appeals.

> direct to class members the best notice practicable under the
> circumstances, including individual notice to all members who can
> be identified through reasonable effort.  The notice must concisely
> and clearly state in plain, easily understood language.
>
> ▪ the nature of the action,
>
> ▪ the definition of the class certified,
>
> ▪ the class claims, issues, or defenses,
>
> ▪ that a class member may enter an appearance through
>   counsel if the member so desires,
>
> ▪ that the court will exclude from the class any member who
>   requests exclusion, stating when and how members may
>   elect to be excluded, and
>
> ▪ the binding effect of a class judgment on class members
>   under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c) .

In this case, all of the individual Class Members have already been identified and have already received notice of the class certification.  Class Counsel has the addresses of all of the Class Members.  Thus, the best notice practicable of this proposed settlement should be direct notice by first class mail rather than by publication.[3]

Exhibit "2" to the instant Motion is a proposed form of Notice to be sent by first class mail to all Class Members.  The Notice states the time, date and place of the hearing to consider final approval; provides that all Class Members may opt-out of the settlement by a certain date, or file and serve an objection by a certain date and present it at the final approval hearing; states the amount of attorneys fees and costs incurred to date; and provides that all Class Members will be bound by the terms of the Settlement, should it be approved, and will release their claims against Defendants.  Mailing of such Notice will save the expense to the class of a second

---

[3]  Notice by publication will encourage persons who are not Class Members to solicit participation in the allocation of the settlement fund.  Class Counsel have already received telephone calls from non-class members seeking compensation for alleged claims not covered by this litigation, such as automobile warranty claims.

mailing of any final approval of the settlement.

## V.   FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED AT THE HEARING FOLLOWING NOTICE AND AN OBJECTION PERIOD

As explained above, rather than preparing and filing a separate, additional motion and brief at a later date, Plaintiffs and Defendants are also jointly moving for *final* approval of the settlement to be granted following the objection period and a fairness hearing.  Therefore, in the interests of efficiency and judicial economy, in minimizing unnecessary delays for the Class Members to receive benefits, the parties request that a hearing to consider *final* approval be scheduled now.  A proposed Final Order will be submitted to the Court by Plaintiffs and Defendants at or before such hearing, after a period in which the Class Members may have an opportunity to file and serve any objections to the proposed settlement after receiving the Notice. At that time, counsel will also submit their response to any objections which may have been lodged.

Final approval of a proposed class settlement lies within the sound discretion of the court. *Harris v. Reeves*, 761 F.Supp. 382 (E.D. Pa. 1991). *See also Walsh*, 726 F. 2d at 965; *Girsh v. Jepson*, 521 F. 2d 153, 156 (3d Cir. 1975).  Approval by the court must be based on the terms and conditions of the proposed settlement because the settlement must stand and fall as a whole and the court may not re-write the agreement.  *Davies v. Continental Bank*, 122 F.R.D. 475 (E.D. Pa. 1988).

The proposed settlement must be fair, reasonable, and adequate to members of the certified class for court approval; "[t]he settlement must be both substantively reasonable compared to the likely rewards of litigation, and the result of good faith, arms length negotiations."  *In Re Novacare Securities Litigation*, Fed. Sec. L. Rep. P 98,930, 1995 WL 605533 (E.D.Pa. 1995) (quoting *Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622, 627

(E.D.Pa.1986) (citations omitted)).  *See also Walsh*, 726 F. 2d at 965; *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978); *Fisher Brothers v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 487 (E.D. Pa. 1985).

"In determining whether to approve a class action settlement under Rule 23(e), '... the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate.'"  *In Re Linerboard Antitrust Litigation*, **:**2004 WL 870685 at *5 (E.D.Pa. April 21, 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 785 (3d Cir.1995)).

Class Counsel respectfully submits that it is unlikely the Court will receive any legitimate reasonable objections to the proposed settlement.  As discussed above, an initial presumption of fairness exists if, as in the instant case, the settlement is recommended by Class Counsel after arms-length bargaining. *In Re: Automotive Refinishing Paint Antitrust Litigation,* 2004 WL 1068807 at *2.

The Third Circuit has identified nine factors as relevant to determining the fairness of a proposed settlement:

(1)     the complexity, expense and likely duration of the litigation;

(2)     the reaction of the class to the settlement;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the risks of establishing liability;

(5)     the risks of establishing damages;

(6)     the risks of maintaining the class action through trial;

(7)     the ability of the defendants to withstand a greater judgment;

(8)     the range of reasonableness of the settlement fund in light of the
        best possible recovery; and,

(9)     the range of reasonableness of the settlement fund to a possible
        recovery in light of the attendant risks of litigation.

*Ralston*, 2000 WL 1781590 at *6 (citing *Girsh,* 521 F.2d at 156); *In Re Novacare Securities*

*Litigation*, 1995 WL 605533 at *5; *Harris*, 761 F.Supp. at 394.  *See also In re Prudential*

*Insurance Company of America Sales Practice Litigation*, 148 F.3d 283, 299 (3d Cir.1998); *In*

*Re Linerboard Antitrust Litigation*, 2004 WL 870685 at *6; *In Re Corel Corporation Inc.*

*Securities Litigation,* 293 F.Supp.2d 484, 489 (E.D. Pa. 2003); *In Re Rite Aid Corporation*

*Securities Litigation*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003).

        The proponents of a settlement bear the burden of proving that these factors weigh in

favor of approval.  *In Re Cendant Corporation Litigation*, 264 F.3d 201, 232 (3d Cir. 2001).

Each of the foregoing factors weigh heavily in favor of a conclusion that the proposed settlement

should be approved.  This action has been pursued for several years.  If the Court were to not

approve the proposed settlement, the complexity, expense and duration of the trial and potential

appeals thereafter would be burdensome and lengthy for the parties and for the judicial system.

        "The reaction of the class 'is perhaps the most significant factor to be weighed in

considering its adequacy.'  This factor 'attempts to gauge whether members of the class support

the settlement' by looking at the 'number and vociferousness of the objectors.'"  *O'Keefe*, 214

F.R.D. 266 at-294 (citations and footnote omitted).  The reaction of Class Members is difficult to

measure precisely at this time, prior to notice, an objection period, and a final hearing on the

fairness of the settlement.  To date, the reaction of the Class has been positive and Class Counsel

have not received any negative reactions.  This is significant because the Class already received

notice of class certification, and the press reported the basic terms of the settlement.  Plaintiffs

and Class Counsel anticipate that objections, if any, will be minimal and individualistic. However, it is unlikely that any dispositive objections will be made to this settlement, particularly considering its high favorability to the Class.  Also, no Class Member has filed any other suit on his or her own behalf.

If any Class Member disapproves of the settlement, he or she has the right to opt-out of the settlement and pursue individual rights and claims.  If any particular Class Member disapproves of the settlement, but decides not to opt-out of it, he or she has the right to file and serve an objection thereto, which this Court may then consider.

The third factor concerning the stage of the proceedings "captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *O'Keefe*, 214 F.R.D. 266 at 299 (citations omitted).  Settlement did not occur until after the completion of discovery and the Court's rulings on the parties' Cross Motions for Summary Judgment.  The parties were on the eve of trial, and the Court had adjourned a key *Daubert* hearing.  Trial before a jury is inherently risky for plaintiffs and defendants.

The fourth and fifth factors concerning the risks of establishing liability and damages also favor settlement.  Plaintiffs were confident that they would be successful on proving liability. However, Defendants were likewise confident that the jury would not award damages.  In *O'Keefe*, the Court reasoned that "[e]stablishing damages is the weakest link in the plaintiffs' prima facie case.  There are factual and legal impediments that class counsel will need to overcome to establish damages." *O'Keefe*, 214 F.R.D. 266 at 300-01.

The Court already indicated to the parties that there is a risk of maintaining the class action through trial.  Defendants filed a Motion to Trifurcate the proceedings.  Although the Court had

not ruled on Defendants' Motion, the Court indicated that it might bifurcate the trial on liability and convene hearings on individual damages.  The parties appreciated the possibility that the Class could be maintained for trial and for equitable relief, but that any monetary relief could have to be proven on an individual basis.  The terms and conditions of the proposed Settlement, and Plaintiffs' proposed Plan of Allocation, reflect this appreciation and provides for sufficient monetary relief to those Class Members of Group B, who had their identities used for unauthorized loans, and those Class Members in Group C, whose liens were not paid on vehicles they traded in to the Defendants.[4]

After the trial, various issues would inevitably be subject to appeals and possibly additional proceedings thereafter in the District Court.  Significantly, the Defendants do not have the monetary resources to compensate Plaintiffs for credit damages.  Their insurance company, Erie Insurance Exchange, has asserted numerous reservations of rights, and stated that it may not pay any potential judgment even if ultimately attained by Plaintiffs.  Even if Plaintiffs obtain a judgment, the nature and extent of insurance coverage available to pay any such judgment could involve additional litigation, attorneys fees and expenses.  Thus, there is an increased risk and cost of litigation for Plaintiffs.  *See Ralston v. Zats*, 2000 WL 1781590 at *6.

Plaintiffs and Class Counsel believe that the factors concerning the range of reasonableness

---

[4] The plan of allocation of settlement proceeds among Class Members must also be approved as part of the settlement. *In Re Corel Corporation Inc. Securities Litigation,* 293 F.Supp.2d at 493. The same standards that apply to approval of the settlement as a whole also apply to the plan of allocation:  the plan of allocation must be fair, reasonable and adequate.  *Id.* (citing  *In re Cendant Corp. Litigation,* 264 F.3d 201, 248 (3d Cir.2001)).  Courts in this district "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Id.* (citing *Aetna Inc. Sec. Litig.,* Civ. A. MDL 1219, 2001 WL 20928, at * 12, 2001 U.S. Dist. LEXIS 68, at *36 (E.D.Pa. Jan.4, 2001).  Here, Plaintiffs' proposed Plan Of Allocation provides monetary damages to those Class Members who incurred credit damage based on a per transaction basis, which Class Counsel believe is the fairest method after consultation with their experts who testified at the *Daubert* hearing.

of the settlement in light of the best possible recovery and the attendant risks of litigation favor final approval of this settlement.  The Court, including the presiding District Court Senior Judge, and the experienced Magistrate Judge, closely supervised and participated in the settlement negotiations.  As set forth above, the Court had not yet ruled on Defendants' *Daubert* Motion or their Motion to Trifurcate, both of which related to the range of monetary recovery.

Significantly, the Settlement also provides substantial value in the form of equitable relief. Indeed, the Court already approved the stipulated equitable relief in its March 26, 2004 and April 30, 2004 Orders.  The settlement provides significant relief which directly responds to the alleged challenged conduct and provides relief to a large group of people with modest individual claims who, as a practical matter, could not seek redress on an individual basis.  *Muse v Dymacol, Incorporated*, 2003 WL 22794698 at *2 (E.D.Pa. 2003).

The United States Supreme Court and the Third Circuit have set forth the general analyses in which courts must engage when approving settlements in class actions.  *See Amchem Products Inc. v. Windsor,* 521 U.S. 591 (1997); *In re Prudential Insurance Company of America Sales Practice Litigation*, 148 F.3d 283, 299 (3d Cir.1998); *In re: General Motors*, 55 F. 3d 768.  In *General Motors*, the Third Circuit stated that a district court's preliminary approval of a class action settlement establishes a presumption of fairness of settlement when the court later finds that (1) negotiations occurred at arms length, (2) there was sufficient discovery, (3) the proponents of the settlement are experienced in similar litigation, and (4) only a small fraction of the class objected. *In re: General Motors*, 55 F.3d at 785.

The Court should have little difficulty in making these findings here.   The parties vigorously pursued this litigation and their differing interests.  Negotiations occurred at arms-length for over six months.  Discovery was completed.  Counsel for the parties are experienced

litigators.  Counsel anticipates that virtually all Class Members will agree to the terms of the settlement.[5]

Class Counsel believes that the proposed Settlement is reasonable and fair to the Class. The Settlement should be approved.[6]

## VII.   <u>CONCLUSION</u>

For all the reasons stated above, Counsel for Plaintiffs and Defendants respectfully jointly request that the settlement between these parties be approved and that an order be issued preliminarily approving the settlement, scheduling dates for objections and a hearing on final approval of the settlement and its terms, on awarding of attorneys' fees, costs and expenses, and on requiring notice to the Class by mail.

Respectfully submitted,

/s Timothy T. Myers                         /s Joseph F. Van Horn, Jr.
Timothy T. Myers, Esquire              Joseph F. Van Horn, Jr., Esquire
Mark A. Kearney, Esquire              Bodell, Bove, Grace & Van Horn, P.C.
Elliott Greenleaf & Siedzikowski, P.C.     30 S. 15th Street, Suite 600
Union Meeting Corporate Center V     Philadelphia, PA  19102
925 Harvest Drive, P.O. Box 3010      Attorneys for B. J. Marchese, Inc. and
Blue Bell, PA   19422                     Benjamin J. Marchese

---

[5] Moreover, none of the concerns raised by the Third Circuit in *General Motors* apply in this case.  In *General Motors*, one of the underlying concerns of the Third Circuit and the numerous objectors was the fee award of $ 9.5 million in a case that settled four months after the complaint was filed and that did not obtain any cash for the class plaintiffs.  Here, the Class will receive immediate, tangible benefits in the form of equitable relief, already approved by this Court, and a settlement fund of $2,450,000.  Those Class members who incurred credit damage will receive cash in proportion to their damage.  Significantly, this Court required Class Counsel to timely file their monthly invoices.  Therefore, Class Counsel's lodestar was always subject to review and scrutiny as the litigation progressed.

[6] The Court should also retain jurisdiction for a reasonable period until the settlement fund is actually distributed and equitable relief achieved.  *In Re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d 315, 321 (3d Cir. 2001) (citing Manual for Complex Litigation (Third) §  30.47 (1995)).  The Court should also retain jurisdiction to enforce the Release upon the Class.  *See In Re Prudential Insurance Company Of America Sales Practice Litigation*, 261 F.3d 355 (3d Cir. 2001).

Attorneys for Plaintiffs

/s Cary L. Flitter                                   /s John W. Ashley
Cary L. Flitter, Esquire                      John W. Ashley, Esquire
Lundy, Flitter, Beldecos & Berger, P.C.      Fonzone & Ashley
450 North Narberth Avenue                 P.O. Box 4180, 33 S. 7th Street
Narberth, PA   19072-1898                 Allentown, PA   18101
Attorneys for Plaintiffs                      Attorneys for Benjamin J. Marchese, III

Dated:  July 9, 2004

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy T. Myers, hereby certify that on this date, I served a copy of the foregoing on the following by first class mail:

Joseph F. Van Horn, Jr., Esquire
Bodell, Bove, Grace & Van Horn
30 South 15th Street, 6th Floor
Philadelphia, PA 19102

John W. Ashley, Esquire
33 South Seventh Street
P.O. Box 4180
Allentown, PA 18105-4180

Michael J. Miller, Esquire
Drinker Biddle & Reath
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

/s Timothy T. Myers
Timothy T. Myers

DATED: July 9, 2004