IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL M. CICCARONE and      :     CIVIL ACTION
RHONDA and MICHAEL MEKOSH      :
     :
    v.      :
     :
B.J. MARCHESE, INC.,      :
BENJAMIN MARCHESE, JR., and      :    NO. 03-CV-1660
BENJAMIN MARCHESE III      :
     :

## MEMORANDUM AND ORDER

**NORMA L. SHAPIRO, S.J.**            **DECEMBER 22, 2004**

     Plaintiffs Michael M. Ciccarone, Rhonda Mekosh, and Michael Mekosh, filing this class action against B.J. Marchese Inc. ("Marchese Inc."), Benjamin Marchese Jr. ("Marchese Jr."), and Benjamin Marchese III ("Marchese III"), alleged that defendants improperly obtained credit reports, made unauthorized loans, and failed to satisfy pre-existing liens on vehicles "traded-in" by customers at defendants' car dealership. The court certified this case as a class action under Fed.R.Civ.P. 23(b)(3) and ordered class counsel to notify class members of their rights under Fed.R.Civ.P. 23(c).

     After extensive arms-length negotiations, the parties reached a settlement approved by the court. Presently before the court is the joint petition of class counsel for an award of attorney's fees and reimbursement of costs.

1

## I. BACKGROUND

### A. Facts and Procedural History

On March 19, 2003, plaintiffs filed this complaint seeking class certification, damages and equitable relief. Plaintiffs alleged that defendants: 1) used consumer credit reports for impermissible and unauthorized purposes, including unauthorized loans in consumers' names in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"); 2) failed to satisfy pre-existing liens on certain vehicles traded-in by consumers, and certain vehicles sold to consumers; and 3) caused adverse credit reports to affect consumer credit ratings, harm to their credit reputations, and invade their credit privacy.

Defendants answered the complaint, asserted numerous affirmative defenses, and denied any liability. On October 9, 2003, class counsel and class representatives Michael M. Ciccarone, Rhonda Mekosh and Michael Mekosh were appointed. The certified class consists of all persons injured from March 19, 2001 through October 9, 2003, with three subgroups:

(a) Plaintiffs and persons who had their consumer report(s) obtained by any defendant for whom the defendants cannot produce authorization of permissible purpose (Group A); and/or

(b) Plaintiffs and persons with loan obligations for vehicles allegedly sold or leased by a defendant that they did not buy or lease from a defendant (Group B);

and/or

(c) Plaintiffs and persons with unpaid loan

obligation(s)for vehicles after title was given to a

defendant under an agreement that the loan

defendant(Group C).

The court approved a proposed form of notice on December 10,

2003.  Class counsel complied with the order to mail notice to

class members with known addresses by first class mail, and to

publish notice in two newspapers.  Nine members chose to opt out

of the class.

Class counsel and defense counsel conducted extensive

settlement negotiations. These settlement negotiations resulted

in the parties' joint motion for equitable relief, and the March

26, 2004 and March 30, 2004 orders approving the proposed

stipulated equitable relief.  Additionally, counsel for the

class, defendants, and Erie Insurance Exchange conducted arms-

length negotiations.  The court presided over these settlement

negotiations with the assistance of the Honorable Magistrate

Judge M. Faith Angell. On May 13, 2004, counsel for the class,

defendants and Erie Insurance Exchange advised the court that

they had reached a settlement for monetary relief of $2,450,000.

### B. The Settlement

The settlement provides both equitable and monetary relief

for the class. Group A class members receive equitable relief:

defendants agree to send notification to credit reporting agencies with a consumer dispute verification form stating that: (1) the credit report and/or inquiry was obtained without a permissible purpose; and (2) directing each Credit Reporting Agency to correct its records immediately and delete the identified inquiry permanently.

Group B class members receive equitable relief: defendants agree to send notification to credit reporting agencies with a consumer dispute verification form stating that: (1) the loan or credit obligation referenced in that letter is not a loan obligation incurred by the identified class member; and, (2) directing the lender and the credit reporting agencies to correct their records immediately and delete the incorrect entry permanently.  Class counsel agree to submit to the credit reporting agencies available information regarding the consumer, the identity of the fraudulent or unauthorized loan and its date as a request for reinvestigation of disputed information pursuant to FCRA §1681i(a).  The credit reporting agencies agree to investigate reported disputes and notify class counsel and defense counsel of the results of the reinvestigation.

Group C class members also receive equitable relief; defendants agree to send a consumer dispute verification form to credit reporting agencies with a notification that: (1) the loan and credit obligation referenced in the letter relating to the identified class member was no longer a loan obligation incurred

by the identified class member after the date of the trade-in;
(2) the lender and the credit reporting agency should immediately
correct their records and refrain from reporting any such entry
as "delinquent"; and (3) no delinquency on the identified loan
obligation after the trade-in date should be referenced or re-
inserted again in an identified class member's consumer report.
Additionally, class counsel agree to submit to the credit
reporting agencies available information regarding the consumer,
the identity of the fraudulent or unauthorized loan and its date
as a request for reinvestigation of disputed information pursuant
to FCRA §1681i(a).  The credit reporting agencies agree to
investigate reported disputes and notify class counsel and
defense counsel of the results of the reinvestigation.
Defendants also agree to execute and deliver to class counsel
written consent to any petition filed in state court by a class
member to transfer title of an identified trade-in vehicle to the
senior lien holder, or if no secured party, to the bona fide
purchaser of the identified vehicle.

    The settlement also provides monetary relief in the amount
of $2,450,000. The proposed plan of allocation will distribute
the fund as follows:

    (1) A total of $75,000 is set aside as a separate fund for
    counsel fees for future prosecution and defense of
    litigation to transfer and clear titles for Group C class
    members.  In the event that the cost of these legal services

is less than $75,000, the remainder will be disbursed to the class.

(2) Reasonable payments will be made or other methods will be used to address alleged liens against Group C class members.  This will not create any right in any lender or third-party, or any obligation by class counsel or any class member, and the class member retains the right to dispute amounts claimed by any lender for alleged pre-existing liens on trade-in vehicles.

(3)  Attorneys' fees and costs approved by the court will be awarded to counsel.

(4)  The remainder of the funds will be distributed to Group B and Group C class members on a *pro rata* basis in proportion to the number of false loans and/or lien obligations in their names.

Preliminary approval of the settlement was granted on July 16, 2004, and class counsel was ordered to send notice of the settlement agreement to members of the class under Rule 23(e)(B). Class members were notified of agreement's provision for attorney's fees and costs.  The notice informed the class that counsel would file a fee petition requesting payment from the settlement, setting forth their lodestar, the evaluation of the equitable relief obtained for the entire class, and the ratio of their fee request to the total value of the combined monetary and equitable relief.  The notice provided an estimate of

$1,090,567.25 in attorney's fees and $106,555.57 in costs as of June 30, 2004.[1]  After notice of the settlement was sent, four additional members opted out.  A fairness hearing was held at which all parties were heard and class members were afforded the opportunity to object.  No class member objected or asked to be heard.

By court order of November 21, 2003, class counsel had filed under seal contemporaneous monthly records of fees and expenses incurred during the previous month.  These records also provided a subtotal of each attorney's hours by various categories of tasks required during the litigation.  Counsel then filed a petition for award of fees and reimbursement of costs on August 16, 2004, with the total number of hours, fees, and costs for each firm.  The petition was supported by affidavits from lead counsel generally describing the services provided by the firms in the litigation, and justifying their hourly rates, total hours, and costs.  The petition also contained affidavits from other experienced attorneys in the region supporting the hourly rates quoted by petitioners.

## II. Legal standard for fee awards and costs reimbursement

---

[1] Class counsel has requested attorney's fees in excess of this estimate, for services rendered after June 30, 2004. Additional fees may be awarded, provided they are not substantially higher than the estimate in the notice.  See, e.g., Grunin v. International House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975);  Boggess v. Hogan, 410 F.Supp. 433, 442 (D.C.Ill. 1975);  In re Engineering Animation Securities Litigation, 203 F.R.D. 417, 423 (S.D.Iowa 2001).

In a certified class action, the court awards a prevailing party reasonable attorney fees and nontaxable costs authorized by law or agreement of the parties.  Fed.R.Civ.P. 23(h). Plaintiffs alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), providing for costs and reasonable attorney's fees as determined by the court.  15 U.S.C. §1681n(a)(3).  The settlement agreement also provides for attorney's fees and costs to class counsel.

The court must thoroughly review the fee application.  In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 819 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1995).  The award of reasonable attorney's fees is within the discretion of the district court.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  In a common fund recovery, attorney's fees may be awarded either by lodestar[2] or percentage of recovery[3].  The lodestar method is typically employed in a statutory fee-shifting action.  The percentage of recovery approach is usually appropriate where the efforts of counsel have generated a "common fund" from which the class and counsel are to be compensated.  General Motors, 55 F.3d at 821.  In this action, the FCRA provides for fee-shifting, and the settlement agreement

_____

[2] The lodestar method calculates fees by multiplying the number of hours reasonably expended by an hourly rate appropriate to the experience of the lawyer and the geographic region.

[3] The percentage of recovery method awards counsel a percentage of the amount recovered for the class, analogous to a contingency fee.

provides for a common fund to compensate class members and pay for legal services necessary to clear title and lien obligations. The settlement also provides for equitable relief giving value to class members in addition to the monetary recovery.

Calculating a percentage of recovery of the common fund only would require the court to assess the monetary value of the equitable relief achieved by the class, but the nature of the equitable relief defies monetary valuation with any precision. The lodestar method has the "benefit of avoiding subjective evaluations of the monetary worth of the intangible rights often litigated in civil rights actions", where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." Id.  For this reason, the court utilizes the lodestar method to calculate the fee award, but the lodestar is cross-checked as a percentage of the approximate total value of the settlement.

Counsel may also be reimbursed for litigation costs reasonably incurred in the creation and protection of a common fund.  See Pawlak v. Greenawalt, 713 F.2d 972, 981 (3d Cir. 1983).  Calculation of costs is subject to the same judicial scrutiny as the award of attorney's fees.  Fisher Bros. v. Cambridge-Lee Indus., Inc., 1987 WL 26480 at *3 (E.D.Pa. 1987).

**A.  Fee award under the lodestar method**

To determine attorney's fees under the lodestar method, the court calculates a "lodestar:" the reasonable hourly rate

multiplied by the number of hours reasonably expended on successful claims.  Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator and Standard Sanitary Corp., 487 F.2d 161, 167-68 (3d Cir. 1973).  "This formulation suggests a twin inquiry into reasonableness: a reasonable hourly rate *and* a determination of whether it was reasonable to expend the number of hours in a particular case."  Ursic v. Bethlehem Mines, 719 F.2d 670, 676 (3d Cir. 1983) (emphasis in original).  The burden is on petitioner to establish entitlement to an award, and to document hours expended and hourly rates.  Hensley, 461 U.S. at 437. First, the court must determine how many hours were spent, by which attorneys, and in what manner.  Next, the court must determine the value of their services to the class.  Lindy, 487 F.2d at 167.

The analysis is specific to each attorney and the type of services provided.  Lindy, 487 F.2d at 167.  An attorney's normal billing rate provides a logical starting estimate for the value of his or her services.  The court may also consider the attorney's experience, legal reputation and status in the firm. Next, the court must determine whether the number of hours expended was reasonable.  See Ursic, 719 F.2d at 670.  Petitioner must document the hours expended, preferably in contemporaneous records, and show that the claimed hours were expended reasonably.

Hourly rates must be compared to prevailing market rates in

-10-

the community for similar service by lawyers of reasonably comparable skill, experience, and reputation. <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984); <u>Smith v. Philadelphia Housing Authority</u>, 107 F.3d 223, 225 (3d Cir. 1997). The plaintiff bears the burden of producing sufficient evidence of reasonable market rates for the legal services rendered. <u>Smith</u>, 107 F.3d at 225.

The petition's total lodestar did not match the totals calculated from the contemporaneous monthly records of fees and expenses filed under seal. The court relies on the contemporaneous monthly records in its calculation of each firm's lodestar. Any fees or costs not submitted in the monthly records are denied.

In some situations, courts may apply a multiplier to enhance the lodestar where it is justified by the quality of the work and the risk of taking the case. The Supreme Court has rejected the use of multipliers in some statutory fee-shifting cases. <u>See City of Burlington v. Dague</u>, 505 U.S. 557 (1992). The use of multipliers may still be allowed in common fund cases when cross-checking against a lodestar, or in a hybrid case such as this. <u>See In re Prudential Ins. Co. Am. Sales Practices Litig</u>, 148 F.3d 283, 341 n.121 (3d Cir. 1998); <u>Brytus v. Spang & Co.</u>, 203 F.3d 238, 243 (2000). When used, "they require particular scrutiny and justification." <u>In re Prudential</u>, 148 F.3d at 341 n.121.

### 1. Lodestar for Elliot, Greenleaf & Siedzikowski

Table 1 - Fees for attorneys, paralegals, and law clerks of
Elliot, Greenleaf & Siedzikowski

| Personnel | Hours | Hourly rate | Personnel subtotals | Personnel totals | Firm total |
|---|---|---|---|---|---|
| T. Myers | 486.10 | $400 | $194,440.00 | | |
| | 512.30 | $410 | $210,043.00 | | |
| | | | | 998.40 hrs, $404,483.00 | |
| M. Kearney | 233.75 | $395 | $92,331.25 | | |
| | 308.60 | $405 | $124,983.00 | | |
| | | | | 542.35 hrs, $217,314.25 | |
| T. Barnes | 63.75 | $165 | $10,518.75 | | |
| | 236.00 | $170 | $40,120.00 | | |
| | | | | 299.75 hrs, $50,638.75 | |
| R. Harrington | 39.10 | $185 | $7,233.55 | | |
| | 169.10 | $190 | $32,129.00 | | |
| | | | | 208.20 hrs, $39,362.50 | |
| K. Anderson | 10.20 | $395 | $4,029.00 | 10.20 hrs, $4,029.00 | |
| J. Lorusso | 3.50 | $150 | $525.00 | | |
| | 9.30 | $165 | $1,534.50 | | |
| | | | | 12.80 hrs, $2,059.50 | |
| A. Nuss (paralegal) | 436.20 | $140 | $61,068.00 | | |
| | 419.10 | $145 | $60,769.50 | | |
| | | | | 855.30 hrs, $121,837.50 | |
| S. Timlin (paralegal) | 187.70 | $140 | $26,278.00 | | |
| | 605.10 | $145 | $87,739.50 | | |
| | | | | 792.80 hrs, $114,017.50 | |
| Other paralegals, law clerks | 32.00 | $60-$100 | $2,927.50 | 32.00 hrs, $2,927.50 | |
| | | | | | 3,751.80 hrs $956,669.50 |

Elliot, Greenleaf & Siedzikowski ("EG&S")is a "full-service"
law firm with more than forty attorneys and several offices in
Pennsylvania.  Their practice includes federal and state trial
and appellate litigation concerning health care, constitutional
issues affecting business and government, contracts,

environmental, insurance, civil rights litigation, employment and disability law, banking, financial services, antitrust, class actions, mass torts, corporate and securities law, construction, products liability, tax, bankruptcy, franchise, trademark and trade secrets, corporate control, white color criminal defense, qui tam, RICO law and grand juries.  EG&S attorneys have recently won numerous multi-million dollar judgments and settlements.

Based on the contemporaneous monthly records filed by EG&S, the court calculates the firm's lodestar as $956,669.50 for 3,751.80 hours of service.  Table 1 provides a breakdown of the lodestar by each attorney's hourly rates and total hours of service.

Attorney Timothy Myers generated the largest portion of the EG&S lodestar.  According to the monthly filings, Mr. Myers provided 998.40 hours of service at $400-$410 per hour[4], a total of $404,483.00.  Mr. Myers is a partner at EG&S with more than fifteen years of trial and appellate experience in complex commercial litigation.  According to supporting affidavits submitted by other, similarly experienced attorneys, his hourly rate of $400-$410 per hour is comparable to other attorneys with his experience in this region.  The monthly records provided to the court sufficiently documented Mr. Myers' hours.  The bulk of his time was spent on pretrial preparation, class certification,

---

[4] EG&S increased its attorneys' hourly rates in January, 2004.

discovery, settlement, and other tasks commensurate with his experience and skill.  Mr. Myers' hourly rates were reasonable, and his hours were spent reasonably.

Attorney Mark Kearney provided 542.35 hours at $395-$405 per hour, a total of $217,314.25.  Mr. Kearney is a partner at EG&S with substantial experience in complex commercial litigation and transactions relating to the formation, funding, management, and divestiture of private and public companies.  He has served as an outside director of financial institutions, publicly traded companies, non-profit institutions and privately held entities. His litigation experience includes commercial, financial, employment, and consumer litigation with emphasis on representation of business owners, investors, directors and officers.  He has served as lead counsel in class actions, multi-district litigation, mass tort actions, and regulatory investigations.  As supported by the submitted affidavits, his hourly rate of $395-$405 per hour is comparable to other attorneys with his experience in this region.  The monthly records provided to the court sufficiently documented Mr. Kearney's hours.  The bulk of his time was spent on pretrial preparation, communications with the court and class members, discovery, settlement, and other tasks commensurate with his experience and skill.  Mr. Kearney's hourly rates were reasonable, and his hours were spent reasonably.

Attorney Todd Barnes, an associate at EG&S, provided 299.75

hours of service at $165-$170 per hour, a total of $50,638.75.
Mr. Barnes received his law degree from the Beasley School of Law
in 2002, and practices commercial, criminal, and civil rights
litigation, complex business and commercial disputes, acquisition
of public companies, corporate fiduciary liability, insurance
insolvency, and tort law.  As supported by the submitted
affidavits, his hourly rate of $165-$170 per hour is comparable
to other attorneys with his experience in this region.  The
monthly records provided to the court sufficiently documented Mr.
Barnes's hours.  The bulk of his time was spent on legal research
and analysis, communications with class members, pretrial
preparation, discovery, and other tasks commensurate with his
experience and skill.  Mr. Barnes's hourly rates were reasonable,
and his hours were spent reasonably.

Attorney Roger Harrington, an associate at EG&S, provided
208.20 hours at $185-$190 per hour, a total of $39,362.50.  Mr.
Harrington holds a M.B.A. and an L.L.M. from Villanova
University.  His practice includes shareholder litigation,
securities fraud, class action and commercial litigation,
construction litigation, insurance litigation, and other
commercial litigation.  As supported by the submitted affidavits,
his hourly rate is comparable to other attorneys with his
experience in this region.  The monthly records provided to the
court sufficiently documented Mr. Harrington's hours.  The bulk
of his time was spent on legal research and analysis,

communications with class members, pretrial preparation, discovery, and other tasks commensurate with his experience and skill.  Mr. Harrington's hourly rates were reasonable, and his hours were spent reasonably.

Attorney Kevin Anderson, a partner at EG&S, provided 10.20 hours at $395 per hour, a total of $4,029.  Mr. Anderson leads EG&S's business and real estate practice, and specializes in bankruptcy.  As supported by the submitted affidavits, his hourly rate is comparable to other attorneys with his experience in this region.  The monthly records provided to the court sufficiently documented Mr. Anderson's hours.  Most of his time was spent on bankruptcy issues.  Mr. Harrington's hourly rates were reasonable, and his hours were spent reasonably.

Attorney J. Fred Lorusso, an associate at EG&S, provided 12.80 hours at $150-165 per hour, a total of $2,059.50.  Mr. Lorusso's practice includes civil and commercial litigation, white collar crime, and health care law.  As supported by the submitted affidavits, his hourly rate is comparable to other attorneys with his experience in this region.  The monthly records provided to the court sufficiently documented Mr. Lorusso's hours.  Most of his time was spent on class certification and pretrial preparation.  Mr. Harrington's hourly rates were reasonable, and his hours were spent reasonably.

Allison Nuss and Sherie Timlin are paralegals at EG&S.  Ms. Nuss provided 855.30 hours, and Ms. Timlin provided 792.80 hours,

each at $140-$145 per hour, a total of $235,855.00 hours.  Their billing rate is comparable to that of other experienced paralegals in the region.  The monthly records provided to the court sufficiently documented their hours.  The bulk of their time was spent on discovery, communications, certification issues, settlement, and other tasks.  Their rates were reasonable, and their hours were reasonably spent.

Laura Vanaskie, Justin Miller, Donna Diseroad, and David Bolno are other paralegals and law clerks at EG&S.  Together, they provided 32.00 hours of service.  EG&S billed their time at $75, $100, $60, and $100 per hour respectively, a total of $2,927.50.  Their rates are comparable to those of other paralegals and law clerks in the region.  The monthly records provided to the court sufficiently documented their hours.  The bulk of their time was spent on investigation, legal research, discovery, pretrial preparation, certification, and settlement.  Their rates were reasonable, and their hours were reasonably spent.

For the above reasons, EG&S's total lodestar of $956,669.50 for 3,751.80 hours of service is reasonable.

## 2. Lodestar for Lundy, Flitter, Beldecos & Berger

Lundy, Flitter, Beldecos & Berger ("LFB&B") is co-lead counsel for the class members.  Founded in 1984, LFB&B combines a commercial litigation practice with a commercial transaction practice. The commercial litigation practice focuses on state and

federal actions, and includes partnership and shareholder disputes, commercial collections, breaches of commercial contracts, trade and competition matters, temporary restraining orders and preliminary injunctions.  The firm has successfully prosecuted and defended a number of class actions in the federal and state courts in Pennsylvania and elsewhere.

Based on the contemporaneous monthly records filed by LFB&B, the court calculates the firm's lodestar as $209,918.50 for 605.60 hours of service.  Table 2 provides a breakdown of the lodestar by each attorney's hourly rates and total hours of service.

Table 2 - Fees for attorneys and law clerks of Lundy, Flitter, Beldecos & Berger

| Personnel | Hours | Hourly rate | Personnel totals | Firm total |
|---|---|---|---|---|
| C. Flitter | 511.10 | $390.00 | $199,329.00 | |
| J. Raughley | 49.30 | $95.00 | $4,683.50 | |
| J. Semler | 12.40 | $225.00 | $2,790.00 | |
| Law clerks | 32.80 | $95.00 | $3,116.00 | |
| | | | | 605.60 hrs, $209,918.50 |

Attorney Cary Flitter generated the largest portion of the LFB&B lodestar.  According to the monthly filings, Mr. Flitter provided 511.10 hours of service at $390 per hour, a total of $199,329.00.  Mr. Flitter is the partner responsible for litigation at LFB&B, and has been a member of the bar for 23 years.  His practice focuses on commercial litigation, consumer

credit matters, and diverse commercial disputes.  According to
the supporting affidavits, Mr. Flitter's hourly rate of $390 is
comparable to rates of similarly experienced attorneys in the
region.  The monthly records provided to the court sufficiently
documented Mr. Flitter's hours.  The bulk of his time was spent
on pretrial preparation, discovery, interaction with the court,
class certification, settlement, and other tasks commensurate
with his experience and skill.  Mr. Flitter's hourly rates were
reasonable, and his hours were spent reasonably.

Attorney John Semler was an associate at LFB&B in 2004.  A
graduate of Widener University School of Law, Mr. Semler was
admitted to the bar in 1992.  His practice includes consumer
finance litigation.  According to the monthly filings, Mr. Semler
provided 12.40 hours of service at $225 per hour, a total of
$2,790.00.  According to the supporting affidavits, Mr. Semler's
hourly rate of $225 is comparable to rates of similarly
experienced attorneys in the region.  The monthly records
provided to the court sufficiently documented Mr. Semler's hours.
The bulk of his time was spent on legal research and discovery.
Mr. Semler's hourly rates were reasonable, and his hours were
spent reasonably.

Joan Raughley is an experienced paralegal at LFB&B.  She
provided 49.30 hours at $95 per hour, a total of $4,683.50.  The
monthly records provided to the court sufficiently documented Ms.
Raughley's hours.  The bulk of her time was spent on document

organization, preparation of exhibits, preparation of subpoenas, and other similar tasks.  Her rate is comparable to that of other paralegals in the region.  Ms. Raughley's hourly rates were reasonable, and her hours were spent reasonably.

The monthly contemporaneous filings from LFB&B reported 32.30 hours by unnamed law clerks.  For most months, LFB&B reported an hourly rate for law clerks of $95 per hour, comparable to rates of other law clerks in the region.  However, in February, 2004, LFB&B billed 20.7 hours to unnamed law clerks at $250 per hour.  LFB&B provided no justification for such a high rate, and this rate is substantially higher than for most law clerks.  Accordingly, the rate for these hours is reduced to $95 per hour.  After this adjustment, LFB&B's law clerks provided 32.80 hours at $95.00 per hour, a total of $3,116.00.  The monthly records provided to the court sufficiently documented the law clerks' hours.  The bulk of their time was spent on legal research, bankruptcy issues, discovery, communications, certification, and pretrial preparation.  The hourly rate of $95 per hour was reasonable, and their hours were spent reasonably.

For the above reasons, LFB&B's total lodestar of $209,918.50 for 605.60 hours of service is reasonable.

In some cases courts may apply a multiplier to petitioners' lodestar based on the quality of the work and other factors. This is not such a case; no multiplier or enhancement of the lodestar is appropriate here.  See In re Prudential, 148 F.3d at 341

n.121.  The quality of services provided was adequate, but not
outstanding.  Class counsel obtained a monetary settlement
substantially less than the $6 million amount they sought, but
the result obtained was eminently fair in the circumstances.  The
combined lodestar for both firms of $1,166,588.00 is reasonable.

**B. The common fund method**

While the court uses the lodestar method to calculate the
fee award, the award is cross-checked by calculating it as a
percentage recovery of the approximate valuation of the total
relief provided.  See Gunter v. Ridgewood Energy Corp., 223 F.3d
190, 194 n.1 (3d Cir. 2000); General Motors, 55 F.3d at 821 n.40.
The settlement agreement provides both monetary and equitable
relief to the class.  The monetary fund is $2,450,000, but a fair
assessment of the total relief must also include the value of the
equitable relief.

Petitioners suggest three ways to evaluate the equitable
relief to the class.  Plaintiffs' expert opined that the monetary
value of the equitable relief was $5,094,500.  This calculation
was based on average values of $300-400 for each member of Class
A, $8,500 for each member of Class B, and $17,000 for each member
of Class C.  Combined with the monetary fund of $2,450,000, the
total value the combined "common fund" would be equal to
$7,544,500.  By this estimate, the total lodestar of
$1,166,588.00 is 15.5% of the common fund.  However, at the May
3, 2004, Daubert hearing, the court questioned the expert's

testimony on damages as speculative and lacking scientific basis.

Another valuation of the equitable relief is to consider the statutory penalty of $100 to $1,000 for each FCRA violation. Some 3,700 class members complained of one or more violations, so that the total statutory penalty assessed could have reached $3,700,000 or higher.[5]  By this estimate, the total lodestar would be 31.5% of the common fund

Petitioners suggest a third method for valuing the equitable relief: the cost of the legal services that resulted in the relief.  Petitioners argue that this amount, added to the value of the monetary fund, would result in a common fund of $3,717,325.84.  The total lodestar would then be 31.4% of the common fund.  This method double-counts some portion of the monetary fund, as some of petitioners' legal costs were expended to obtain the monetary fund.  It also assumes that the fees were reasonable.

The most straightforward method for estimating the value of the equitable relief is to have it equal the value of the monetary relief.  The value of the common fund would be twice that of the monetary relief, or $4.9 million, and the total lodestar would then be 23.8% of the common fund.

---

[5] Petitioners argue that the monetary fund of $2.45 million should be added to the potential statutory penalties of $3.7 million to reach a total common fund value of $6.15 million. This double-counts the monetary fund, as it never would have been awarded had statutory damages been awarded.  Section 1681n of the FCRA allows for actual damages *or* statutory damages, not both.

By any of these methods, the lodestar as a percentage of recovery falls within an allowable range.  Fee awards have recently ranged from fifteen to forty-five percent of the settlement fund.  Petruzzi's Inc. v. Darling-Delaware Co., Inc., 983 F.Supp. 595, 620 (M.D.Pa. 1996); Weiss v. Mercedes Benz of North Am., Inc., 899 F.Supp. 1297, 1304 (D.N.J. 1995); In re SmithKline Beckman Corp. Secs. Litig., 751 F.Supp. 525, 533 (E.D.Pa.1990); see also Sala v. National R.R. Passenger Corp., 128 F.R.D. 210, 212 (E.D.Pa.1989);   In re TSO Fin. Litig., 1989 WL 80316 (E.D.Pa. July 17, 1989).  The total lodestar is reasonable as cross-checked against the percentage of recovery.

### C. Litigation-related costs and expenses

EG&S and LFB&B seek total costs in the amount of $111,514.31.  Costs incurred by petitioners necessary and reasonably related to the interests of the class should be reimbursed.  In re THC Financial Corp. Litigation, 86 F.R.D. 721, 740 (D. Haw. 1980).  Costs must be sufficiently itemized to allow the court to make an informed determination of whether the costs are allowable.  Harceg v. Brown, 536 F. Supp. 125, 131 (N.D. Ill. 1982).  Where counsel verifies by affidavit that the costs petitioned for are the actual costs incurred, the affidavit bears great weight.  See, e.g., In re: Kulicke and Soffa Industries, Inc. Securities Litigation, 747 F. Supp. 1136 (E.D. Pa. 1990). Counsel filed monthly affidavits which itemized expenses incurred from January 2003, until September 2004.  Counsel subsequently

filed a joint petition for attorney fees and reimbursement of costs, as well as subsequent submissions supporting these costs as requested by the court.  Upon consideration of the foregoing, reimbursement of costs is awarded to EG&S as shown in Table 3:

Table 3 - Costs for Elliot, Greenleaf & Siedzikowski

| Item | Cost |
|---|---|
| In-House Copying | $ 32,902.75 |
| Outside Copying Service: | 4,741.07 |
| Facsimile | 2,753.00 |
| Long distance telephone | 29.09 |
| Computerized legal research | 725.87 |
| Messenger | 656.00 |
| Express mail | 262.08 |
| Parking | 262.50 |
| Subpoena fee | 295.00 |
| Dockets | 32.97 |
| Transcripts | 4,403.19 |
| Mileage | 51.42 |
| Secretary/clerk overtime | 781.96 |
| Title investigators; custom computer system | 2,732.00 |
| Publication of notice; class mailbox | 3,433.48 |
| Total | $54,062.38 |

Several costs listed in the affidavits and petitions have not been allowed.  Postage expenses are disallowed as ordinary overhead is included in the attorney's hourly rate.  Expenses for supplies are disallowed for the same reason.  The separate itemized cost for "velobind" is also disallowed as a supply expense that is included in overhead.  Costs for telephone charges are allowed if for long distance fees.

There are discrepancies between some costs stated in the joint petition and the monthly affidavits provided by counsel; in the event of a discrepancy between the two, the court has awarded the cost stated in the contemporaneous monthly affidavits, as

-24-

counsel was informed at the start of the litigation.

The court asked counsel to justify several expenses including those for Messenger Services, Copying, Outside Professional Services, and Secretary/Clerk Overtime. Counsel provided the court with sufficient substantiation of those costs, and those costs are awarded.

Upon consideration of the itemized monthly affidavits, the joint petition for costs and subsequent submissions in support of the joint petition, reimbursement for costs is awarded to LFB&B as shown in Table 4:

Table 4 - Costs awarded to Lundy, Flitter, Beldecos & Berger

| Item | Cost |
|------|------|
| Copying | $ 1,307.50 |
| Facsimile | 770.00 |
| Long Distance Telephone | 71.76 |
| Computerized Legal Research | 2,346.00 |
| Court Reporting | 937.50 |
| Messenger | 78.60 |
| Express Mail | 205.00 |
| Parking | 122.00 |
| Total | $5,838.36 |

Several costs listed in counsel's petition and monthly affidavits are not allowed. Postage expenses are not allowed as they are usual office expenses, and included in the attorney's hourly rate. Similarly, local telephone costs are disallowed. If any discrepancy existed between the costs stated in the joint petition and those within the monthly affidavits, the costs reflected in the affidavits were used.

The court asked counsel to justify several expenses

including those for Messenger Services, Copying, Telephone, and Miscellaneous costs.  Counsel provided the court with sufficient substantiation of those costs, and those costs are awarded in accordance with the above table.

LFB&B also request reimbursement for costs associated with two expert witnesses used during the trial.  The total bill for these two experts amounted to $39,550.00.  Travel related expenses were incurred in association with the testimony of one of the experts, in the amount of $1,287.10.

Expenses of experts are recoverable, especially where they are indispensable.  See Black Grievance Committee, 802 F.2d at 657;  Black Grievance Committee v. Philadelphia Elec. Co., 690 F. Supp. 1393, 1403-04 (E.D. Pa. 1988).  The cost of deposition transcripts is indisputably recoverable.  In re: Paoli Railroad Yard PCB Litigation, 221 F.3d 449 (3d Cir. 2000).  When a party deposes a witness there is a strong presumption that the witness' testimony meets the standard of necessity.  U.S. Industries v. Touche, Ross & Co., 854 F.2d 1223 (10th Cir. 1988).

The travel related expenses were justified by counsel in their November 1, 2004 submission to the court, and are allowed in full.  With that same submission, counsel attempted to justify the expense of the two expert witnesses by citing the utility of each witness's testimony.  While the court would have decided to narrow the scope of what the experts would be able to testify to at trial, the expert testimony was nonetheless necessary.  The

-26-

expert testimony was obviously useful as it helped to achieve the eventual settlement between the parties.  The expert witness costs are allowed in full.  Reimbursement for expert costs to LFB&B will be awarded as shown in Table 5:

Table 5 - Expert witness costs awarded to Lundy, Flitter, Beldecos & Berger

| Item | Cost |
| --- | --- |
| Witness Airfare | $    772.90 |
| Witness Lodging | 514.20 |
| Witness Payment | 39,550.00 |
| Total | $40,837.10 |

The total costs requested by joint counsel were $111,514.31. The total costs awarded to counsel in light of counsel's substantiation of questionable costs and the court's consideration of both the joint petition and monthly affidavits, are $100,737.84.  These costs were sufficiently documented and reasonably incurred.

**III. Conclusion**

EG&S is awarded $956,669.50 in reasonable attorney's fees, and $54,062.38 in costs, a total of $1,010,731.88.  LFB&B is awarded $209,918.50 in reasonable attorney's fees and $46,675.46 in costs, a total of $256,593.96.  The total award for both firms is $1,267,325.84.[6]  Interest earned on these amounts shall accrue

---

[6] The settlement agreement provides for additional attorney's fees not to exceed $75,000 for litigation to transfer and clear title for Group C members who purchased vehicles without clear title.  Class counsel will document these fees in an additional petition.  In the event these fees do not exceed $75,000, the remainder will be returned to the class.

on behalf of respective counsel on the date defendants tender
payment.

    An appropriate order follows.